AO 106 (Rev. 04/10) Application for a Search Warrant

FILED — ENTERED
LODGED — RECEIVED

JUN 08 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Subject Phones, as more particularly described in
Attachments A1-A6

Case No. **MJ18 - 266**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A1-A6, attached hereto and incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1) and 846 | Distribution and Possession with Intent to Distribute a Controlled Substance, and Conspiracy to Distribute a Controlled Substance. |

The application is based on these facts:
See affidavit of Special Agent Tammy Spencer, HSI, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Tammy Spencer, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____06/08/2018_____

*Judge's signature*

City and state: _____Seattle, WA_____

Hon. Paula L. McCandlis, U.S. Magistrate Judge
*Printed name and title*

USAO# 2018R00653

# AFFIDAVIT

STATE OF WASHINGTON     )
                                )
COUNTY OF KING           )

I, TAMMY SPENCER, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Special Agent (SA) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI), Special Agent in Charge, Seattle, Washington. I have been an HSI Special Agent or a Special Agent with one of ICE's predecessor agencies, the U.S. Customs Service, since April 1998. Since entering on duty, I have investigated a wide variety of criminal violations to include narcotics trafficking, money laundering, wire fraud, commercial fraud, intellectual property crimes, smuggling, illegal exports, counter-proliferation violations, child pornography, and other crimes. I am currently assigned to the drug and bulk cash smuggling group where my duties include investigating individuals who are involved in the trafficking of illegal substances. This has included numerous investigations involving drug trafficking organizations (DTOs).

2.      I have participated in investigations in which money launderers and drug traffickers relied heavily upon telephone communication as a means of communicating with their associates, confidential informants, cooperating individuals and undercover officers. I have interviewed individuals who have been directly and indirectly involved in amassing, spending, converting, transporting, distributing, laundering, and concealing proceeds of narcotics trafficking. I have also worked and consulted with numerous law enforcement officers experienced in narcotics and money laundering investigations. As a result, I am familiar with how money launderers and drug traffickers speak to each other and generally conduct business. For example, I am aware that money launderers and

AFFIDAVIT OF SA SPENCER – 1
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  drug traffickers discussing criminal matters over the phone often speak in code or in
2  vague terms.  I am also aware that these subjects frequently (1) provide false subscriber
3  information to the service providers, (2) use phones which are subscribed to under
4  identities other than their own, and (3) change phones in order to avoid detection by law
5  enforcement.

6                          **PURPOSE OF AFFDAVIT**

7        3.      This affidavit is submitted in support of an application for search warrants
8  pursuant to Federal Rule of Criminal Procedure 41 to search the cellular telephones
9  described below, collectively referred to as "**SUBJECT PHONES**," more particularly
10  described in Attachments A1-A6, attached hereto and incorporated herein:

11              a.      A blue Kyocera touch-screen cellular phone, Model C6743, HEX
12  number 990-006-107-357-52, seized from a Nissan Versa driven by JOSUE BARBA-
13  ARRIAGA (hereinafter "**SUBJECT PHONE #1**") at the time of his arrest on May 8,
14  2018;

15              b.      A black LG flip phone, Model LG-B470, Serial Number
16  709VTYK362282, seized from a Nissan Versa driven by JOSUE BARBA-ARRIAGA
17  (hereinafter "**SUBJECT PHONE #2**") at the time of his arrest on May 8, 2018;

18              c.      A black ZTE touch-screen cellular phone, Model N9136, Serial
19  Number 325776802F15, seized from a Nissan Versa driven by JOSUE BARBA-
20  ARRIAGA (hereinafter "**SUBJECT PHONE #3**") at the time of his arrest on May 8,
21  2018;

22              d.      A black LG touch-screen cellular phone with a blue case, Model
23  LGMP260, Serial Number 703CYWC093065, seized from the person of GERERDO
24  SALCEDO-ALCANTAR (hereinafter "**SUBJECT PHONE #4**") at the time of his
25  arrest on May 8, 2018;

26              e.      A gold iPhone touch-screen cellular phone, Model A1660, FCC ID
27  BCG-E3085A IC: 579C-E3085A, seized from a Chevrolet Tahoe driven by GABRIEL

28

AFFIDAVIT OF SA SPENCER – 2
USAO #2018R00653

1  SAUCEDO-ALCAUTER (hereinafter "**SUBJECT PHONE #5**"), at the time of his

2  arrest on May 8, 2018; and

3          f.      A Verizon ZTE silver and black flip phone, Model Z233V, Serial

4  Number 32F476342FEB, seized from a Chevrolet Tahoe driven by GABRIEL

5  SAUCEDO-ALCAUTER (hereinafter "**SUBJECT PHONE #6**"), at the time of his

6  arrest on May 8, 2018).

7          4.      The applied-for warrant would authorize the forensic examination of

8  **SUBJECT PHONES** for the purpose of identifying electronically stored data

9  particularly described in Attachment B.

10         5.      The facts set forth in this Affidavit are based on my own personal

11  knowledge; information obtained from other individuals during my participation in this

12  investigation, including other law enforcement officers; review of documents and records

13  related to this investigation; communications with others who have personal knowledge

14  of the events and circumstances described herein; and information gained through my

15  training and experience.  Because this Affidavit is submitted for the limited purpose of

16  establishing probable cause in support of the application for the requested search

17  warrants, it does not set forth each and every fact that I or others have learned during the

18  course of this investigation.

19         6.      As set forth herein, there is probable cause to believe that a search of the

20  **SUBJECT PHONES** will reveal evidence of violations of Title 21, United States Code,

21  Sections 841(a)(1) (distribution and possession with intent to distribute a controlled

22  substance) and 846 (conspiracy to distribute a controlled substance).  The items to be

23  seized are described within Attachment B, incorporated herein, and comprise evidence,

24  fruits, and instrumentalities of violations of Title 21, United States Code, Sections

25  841(a)(1) (distribution and possession with intent to distribute a controlled substance) and

26  846 (conspiracy to distribute a controlled substance).

27         7.      This is the first application for a search warrant of the **SUBJECT**

28  **PHONES** in this judicial district related to this investigation.

AFFIDAVIT OF SA SPENCER – 3
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SUMMARY OF PROBABLE CAUSE

8.      On or about April 18, 2018, HSI Task Force Officer (TFO) Amy Branham spoke with an HSI cooperating source (hereinafter "CS-1"). Following her conversation with CS-1, TFO Branham advised me that CS-1 told her the following.

9.      On or about April 18, 2018, CS-1 made contact with a drug trafficker that CS-1 knew by the moniker "El Canario" (the Canary) – by investigation determined to be GERERDO SALCEDO-ALCANTAR. CS-1 indicated that El Canario wished to sell CS-1 approximately five pounds of methamphetamine. Prior to selling CS-1 the methamphetamine, GERERDO SALCEDO-ALCANTAR wished to provide CS-1 a sample of the drugs. After the sample was provided, CS-1 would place an order for five pounds of methamphetamine.

**Cooperating Source Reliability and Background**

10.      The reliability of CS-1 is based on the fact that he/she has assisted HSI with several investigations in the past few years. I am not aware of any false information provided by CS-1 during previous investigations. As in this case, on the prior occasions that CS-1 assisted law enforcement, he/she made controlled purchases of narcotics at the direction of law enforcement. Prior to these controlled buys, CS-1's person and/or vehicle were searched for controlled substances. On each occasion, CS-1's person/vehicle were found to be free of controlled substances. CS-1 was then observed meeting with target(s) of investigation where the controlled purchase was conducted. After the controlled purchase, positive surveillance of CS-1 was maintained as CS-1 traveled to the debrief location. CS-1 provided the controlled substance(s) that had just been purchased to the debriefing officers/agents. CS-1 was then searched again, with no additional controlled substances found on his/her person or in his/her vehicle.

11.      CS-1 has shown a working knowledge of the drug business. CS-1 has a criminal and immigration history. CS-1 has one conviction for a state drug trafficking crime, a conviction for illegal re-entry after deportation, and an additional arrest for

AFFIDAVIT OF SA SPENCER – 4
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

narcotics trafficking which was dismissed.  CS-1 is working with HSI in return for payment and immigration benefits.

**May 2, 2018, Sample Meeting with GERERDO SALCEDO-ALCANTAR, aka "El Canario"**

12.     On May 2, 2018, agents and task force officers from the HSI Seattle High Intensity Drug Trafficking Activity Task Force (hereinafter "HHTF") conducted an undercover meeting with El Canario.

13.     During the course of this meeting, CS-1—acting at the direction of law enforcement—obtained a methamphetamine sample and arranged for a future purchase of methamphetamine.  My knowledge of the events that occurred during this meeting is based on my discussions with the officers present during the meeting, and my review of their written notes.  In this manner, they relayed to me their observations, including the following.

14.     At approximately 11:00 A.M., TFO Branham and SA Lassiter met with CS-1 and conducted a pat-down search of CS-1's person and vehicle.  The search yielded negative results for contraband or bulk currency.  From this time until the end of the sample buy operation conducted on May 2, 2018, CS-1 remained under constant surveillance by law enforcement.

15.     At approximately 12:20 P.M., law enforcement observed CS-1 arrive at the Mill Apartments, located at 1324 Mill Creek Boulevard in Mill Creek, WA.  At the direction of officers, CS-1 parked at a predetermined location within the apartment's parking lot.

16.     At approximately 12:25 P.M., law enforcement observed an individual – subsequently identified as GERERDO SALCEDO-ALCANTAR– approach CS-1's location.  Officers indicated that GERERDO SALCEDO-ALCANTAR appeared to be approximately thirty-five years old, 5'7", 150 pounds, with a skinny build and dark goatee.  Officers also indicated that GERERDO SALCEDO-ALCANTAR was wearing a black and yellow hard hat – with a "Hawkeye" type bird on the side, clear eye protection,

AFFIDAVIT OF SA SPENCER – 5
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  and an orange safety vest – with "BRinc" written on the back.  SA Rios photographed
2  GERERDO SALCEDO-ALCANTAR and later shared this photographs with members of
3  the task force.

4        17.  Law enforcement observed that GERERDO SALCEDO-ALCANTAR had
5  walked from the north side of the Mill Apartment complex directly to CS-1's vehicle.
6  GERERDO SALCEDO-ALCANTAR was observed entering the front seat of CS-1's
7  vehicle.

8        18.  Approximately ten minutes later, officers observed GERERDO
9  SALCEDO-ALCANTAR exit CS-1's vehicle and walk away.  Following the meeting,
10  surveillance officers observed another vehicle (a silver Chevrolet Pickup Truck) appear
11  to follow CS-1 as he/she departed the parking lot of the Mill Apartments.  Agents were
12  unable, however, to determine whether this vehicle was in fact conducting counter
13  surveillance.

14        19.  Immediately following the meeting with GERERDO SALCEDO-
15  ALCANTAR, agents stayed in visual contact with CS-1 as he/she proceeded to a
16  predetermined debrief location.  Upon debrief, CS-1 advised the agents that GERERDO
17  SALCEDO-ALCANTAR had provided the sample to CS-1 as planned, and CS-1 and
18  GERERDO SALCEDO-ALCANTAR had agreed to increase the purchase amount of
19  methamphetamine from five pounds to six pounds.  CS-1 then gave law enforcement a
20  baggie containing a crystalline substance and explained that GERERDO SALCEDO-
21  ALCANTAR had provided the substance to CS-1 during the meeting in CS-1's car.

22        20.  SA Lassiter and TFO Branham field-tested this substance using a narcotics
23  field test kit.  The substance tested positive for the properties of methamphetamine.  The
24  net weight of the substance – without packaging – was 3.2 grams.

25  **May 8, 2018, Controlled Delivery of Methamphetamine**
26        21.  On May 8, 2018, agents and task force officers from HHTF conducted a
27  second undercover meeting with members of the DTO.  The purpose of the meeting was
28  for CS-1 to complete the purchase of six pounds of methamphetamine that he had

1  planned with GERERDO SALCEDO-ALCANTAR on May 2, 2018.  Prior to this

2  meeting, CS-1 advised that GERERDO SALCEDO-ALCANTAR had told him/her that

3  GERERDO SALCEDO-ALCANTAR's brother – who resembled GERERDO

4  SALCEDO-ALCANTAR– would be the individual who completed the transaction with

5  CS-1.

6       22.     My knowledge of the events occurring during this meeting is based on my

7  discussions with the officers present during the meeting, and my review of their written

8  notes.  In this manner, they relayed to me their observations, including the following.

9       23.     At approximately 12:20 P.M., TFO Branham and TFO San Miguel met

10  with CS-1 and conducted a pat-down search of CS-1's person and vehicle.  The search

11  yielded negative results for contraband or bulk currency.  From this time, until the end of

12  the operation conducted on May 8, 2018, CS-1 remained under constant surveillance by

13  law enforcement.

14       24.     At approximately 12:50 P.M., CS-1 placed a phone call to GERERDO

15  SALCEDO-ALCANTAR.  TFOs Branham and San Miguel were present with CS-1

16  during this phone call.  During the call, CS-1 told GERERDO SALCEDO-ALCANTAR

17  that he/she was on his/her way to the delivery location.  GERERDO SALCEDO-

18  ALCANTAR said that he would call his boss and advise that the drugs should be brought

19  to the delivery location.

20       25.     At approximately 12:53 P.M., GERERDO SALCEDO-ALCANTAR called

21  CS-1 back.  At the direction of the officers, CS-1 attempted to change the meet location.

22  GERERDO SALCEDO-ALCANTAR would not agree to a change in delivery location,

23  and indicated that he wanted to meet at the same apartments where CS-1 and GERERDO

24  SALCEDO-ALCANTAR had met on May 2, 2018, *i.e.*, the Mill Apartments located at

25  1324 Mill Creek Boulevard, Mill Creek, WA.

26       26.     Shortly after 1:00 P.M., TFOs Branham and San Miguel directed CS-1 to

27  travel to the delivery location as directed by GERERDO SALCEDO-ALCANTAR.

28

AFFIDAVIT OF SA SPENCER – 7
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Officers followed CS-1 as he/she traveled from the staging location to the Mill
2  Apartments.

3      27.    At approximately 1:16 P.M., SA MacDonald observed GERERDO
4  SALCEDO-ALCANTAR working at the Mill Apartments.  The location where
5  GERERDO SALCEDO-ALCANTAR was working had a view of the entrance of the
6  apartment complex.  SA MacDonald recognized GERERDO SALCEDO-ALCANTAR
7  based upon the photo taken by SA Rios on May 2, 2018.  GERERDO SALCEDO-
8  ALCANTAR was wearing the same hard hat with a "Hawkeye" logo on the side.

9      28.    At approximately 1:17 P.M., officers observed a possible counter
10  surveillance vehicle, a silver 2001 Chevy Tahoe bearing Washington license plate
11  BIS6235 (registered to an individual unknown to agents working on this case).
12  Specifically, SSA Dkane and SA Rios observed the Tahoe circling the parking lot at the
13  Mill Apartments.

14      29.    At approximately 1:18 P.M., GERERDO SALCEDO-ALCANTAR called
15  CS-1 to see when CS-1 would arrive at the delivery location.  CS-1 told GERERDO
16  SALCEDO-ALCANTAR that he/she was very close.  Law enforcement heard CS-1's
17  portion of this call via a body wire transmitter that CS-1 was wearing.

18      30.    At about that same time, the Tahoe exited the Mill Apartments and parked
19  in the apartment complex to the north, across Mill Creek Boulevard.  The Tahoe parked
20  in such a way that the driver could see the entrance to the Mill Apartments.

21      31.    At approximately 1:18 P.M., CS-1 arrived at the Mill Apartments and
22  parked under the carport at building A (the same location used for the May 2, 2018,
23  sample meeting).  Moments later, SA Rios and SSA Dkane observed a blue Nissan Versa
24  bearing Illinois plates AS73682 pull up next to the driver side of CS-1's vehicle (this
25  vehicle is registered to an individual unknown to agents working on this case).

26      32.    Law enforcement observed that the driver of the Nissan Versa was the only
27  individual in the vehicle.  Law enforcement then observed the driver of the Nissan Versa
28  – subsequently identified as JOSUE BARBA-ARRIAGA – exit the Nissan Versa and

AFFIDAVIT OF SA SPENCER – 8
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   proceed to the passenger's side of CS-1's vehicle.  SA Rios and SSA Dkane observed

2   that JOSUE BARBA-ARRIAGA was carrying a black and red bag as he entered CS-1's

3   vehicle.

4         33.     While CS-1 and JOSUE BARBA-ARRIAGA met inside of CS-1's vehicle,

5   SA Rios and SSA Dkane observed the Tahoe drive back into the Mill Apartments.  The

6   Tahoe drove by CS-1's vehicle.  The Tahoe first stopped next to the Versa, before

7   ultimately parking approximately forty-five feet behind CS-1's vehicle.  The Tahoe was

8   positioned so that the driver of the Tahoe had full view of CS-1's vehicle.

9         34.     Approximately one minute later, CS-1 provided TFO San Miguel the pre-

10  determined signal to indicate that CS-1 had seen the drugs.  At that time, TFO San

11  Miguel called in the arrest teams and SA Rios placed JOSUE BARBA-ARRIAGA into

12  custody.  When agents made contact with JOSUE BARBA-ARRIAGA, he was seated in

13  the front passenger seat of CS-1's vehicle.

14        35.     As agents approached JOSUE BARBA-ARRIAGA – wearing "Police"

15  markings – the driver of the Tahoe attempted to quickly leave the parking lot of the Mill

16  Apartment complex.  Law enforcement stopped the Tahoe before it left the parking lot.

17  SSA Dkane then placed the driver of the Tahoe into custody.  The driver was later

18  identified as GABRIEL SAUCEDO-ALCAUTER – the brother of GERERDO

19  SALCEDO-ALCANTAR.

20        36.     Moments later, SA MacDonald located GERERDO SALCEDO-

21  ALCANTAR in another part of the Mill Apartment complex.  GERERDO SALCEDO-

22  ALCANTAR was wearing the same "Hawkeye" helmet and BRInc vest that he had been

23  observed wearing on the day of the sample meeting on May 2, 2018.  GERERDO

24  SALCEDO-ALCANTAR was taken into custody by SA MacDonald and SSA Dkane.  At

25  the time of his arrest, GERERDO SALCEDO-ALCANTAR was carrying **SUBJECT**

26  **PHONE #4** in his hand.

27        37.     TFO San Miguel requested and obtained consent from GABRIEL

28  SAUCEDO-ALCAUTER to search the Tahoe.  Agents subsequently located **SUBJECT**

AFFIDAVIT OF SA SPENCER – 9
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  **PHONES #5 & #6** behind the driver's seat and around the center console of the Tahoe

2  driven by GABRIEL SAUCEDO-ALCAUTER.

3      38.     TFO San Miguel also requested and obtained consent from JOSUE

4  BARBA-ARRIAGA to search the Nissan Versa.  Officers then located **SUBJECT**

5  **PHONES #1 – #3** in the backseat area of the Nissan Versa.

6      39.     TFO Branham recovered the black and red bag that BARBA-ARRIAGA

7  has been observed carrying into CS-1's vehicle.  The bag was located on the center

8  console between the driver and front passenger seats.  The bag was open when TFO

9  Branham located it.  The bag contained six cellophane wrapped packages containing a

10  white crystalline substance.

11      40.     TFO Branham and TFO San Miguel field-tested this substance using a

12  narcotics field test kit.  The substance tested positive for the properties of

13  methamphetamine.  The total weight of the substance – with packaging – was 2,771.2

14  grams.

15      41.     TFO San Miguel advised JOSUE BARBA-ARRIAGA of his *Miranda*

16  rights in the Spanish language.  JOSUE BARBA-ARRIAGA indicated that he understood

17  his rights.  JOSUE BARBA-ARRIAGA then told TFO San Miguel that he had been

18  provided the black and red bag – found to contain methamphetamine – by a dark-skinned

19  Hispanic male.  JOSUE BARBA-ARRIAGA stated that he was delivering the bag at the

20  direction of someone that had called him on the phone.  JOSUE BARBA-ARRIAGA

21  indicated that he did not know the identity of the person who had called him on the cell

22  phone and had directed him to deliver the bag.  JOSUE BARBA-ARRIAGA disavowed

23  knowledge of the contraband nature of the contents of the black and red bag.

24  Upon debrief of CS-1 by TFO Branham, CS-1 stated that when JOSUE BARBA-

25  ARRIAGA got into CS-1's vehicle, JOSUE BARBA-ARRIAGA told CS-1 to take

26  "it."  JOSUE BARBA-ARRIAGA then placed the bag on the center console.  The bag

27  was initially closed.  CS-1 then asked if there were "six" – meaning six pounds of

28  methamphetamine.  JOSUE BARBA-ARRIAGA replied, "yes, six."  CS-1 told JOSUE

AFFIDAVIT OF SA SPENCER – 10
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  BARBA-ARRIGA that he wanted to count the packages. JOSUE BARBA-ARRIAGA
2  objected and stated, "Here? People might see us." CS-1 then took one of the six
3  packages out of the black and red bag. CS-1 counted the remaining five packages, but
4  did not remove them from the bag. Once CS-1 confirmed the contents of the black and
5  red bag, he gave a predetermined signal to law enforcement confirming that the
6  methamphetamine was present in the vehicle.[1]

7      42.    **SUBJECT PHONES** are currently in the custody of HSI at 1000 Second
8  Avenue, Seattle, Washington. In my training and experience, I know that **SUBJECT**
9  **PHONES** have been stored in a manner in which their contents are, to the extent material
10  to this investigation, in substantially the same state as they were when **SUBJECT**
11  **PHONES** first came into the possession of HSI.

12      **DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES**

13      43.    Based upon my training and experience, and conversations with, and
14  training from, other officers and agents involved in narcotics investigations, I know the
15  following about drug traffickers and their use of cell phones.

16      44.    Traffickers of controlled substances commonly maintain records reflecting
17  names or nicknames, addresses, vehicles, and/or telephone numbers of their suppliers,
18  customers and associates in the trafficking organization. Traffickers commonly maintain
19  this information in books or papers as well as in cellular telephones and other electronic
20  devices. Traffickers often maintain cellular telephones for ready access to their clientele
21  and to maintain their ongoing narcotics business. Traffickers frequently change their
22  cellular telephone numbers to avoid detection by law enforcement, and it is common for
23  traffickers to use more than one cellular telephone at any one time.

24      45.    Narcotics traffickers sometimes take, or cause to be taken, photographs
25  and/or video recordings of themselves, their associates, their property, and their illegal

26

27

---

28  [1] Though CS-1 was wearing a body wire, the recording of the exchange between CS-1 and
BARBA-ARRIAGA in CS-1's vehicle is not intelligible.

AFFIDAVIT OF SA SPENCER – 11
USAO #2018R00653

1  product.  Given the widespread use of digital cameras, and the fact that virtually all smart

2  phones have a built-in digital camera, I know that digital photos and/or video recordings

3  are likely to be found on **SUBJECT PHONES**.

4      46.    Drug dealers use cellular telephones as a tool or instrumentality in

5  committing their criminal activity.  They use them to maintain contact with their

6  suppliers, distributors, and customers.  They prefer cellular telephones because, first, they

7  can be purchased without the location and personal information that land lines require.

8  Second, they can be easily carried to permit the user maximum flexibility in meeting

9  associates, avoiding police surveillance, and traveling to obtain or distribute drugs.

10  Third, they can be passed between members of a drug conspiracy to allow substitution

11  when one member leaves the area temporarily.  Since cellular phone use became

12  widespread, every drug dealer I have contacted has used one or more cellular telephones

13  for his or her drug business.  I also know that it is common for drug traffickers to retain in

14  their possession phones that they previously used, but have discontinued actively using,

15  for their drug trafficking business.  Based on my training and experience, the data

16  maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes.

17  This includes the following:

18      47.    The assigned number to the cellular telephone (known as the mobile

19  directory number or MDN), and the identifying telephone serial number (Electronic

20  Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

21  Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

22  important evidence because they reveal the service provider, allow us to obtain subscriber

23  information, and uniquely identify the telephone.  This information can be used to obtain

24  toll records, to identify contacts by this telephone with other cellular telephones used by

25  co-conspirators, to identify other telephones used by the same subscriber or purchased as

26  part of a package, and to confirm if the telephone was contacted by a cooperating source.

27      48.    The stored list of recent received, missed, and sent calls is important

28  evidence.  It identifies telephones recently in contact with the telephone user.  This is

AFFIDAVIT OF SA SPENCER – 12
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   valuable information in a drug investigation because it will identify telephones used by

2   other members of the organization, such as suppliers, distributors and customers, and it

3   confirms the date and time of contacts.  If the user is under surveillance, it identifies what

4   number he called during or around the time of a drug transaction or surveilled meeting.

5   Even if a contact involves a telephone user not part of the conspiracy, the information is

6   helpful (and thus is evidence) because it leads to friends and associates of the user who

7   can identify the user, help locate the user, and provide information about the user.

8   Identifying a defendant's law-abiding friends is often just as useful as identifying his

9   drug-trafficking associates.

10          49.     Stored text messages are important evidence, similar to stored numbers.

11   Agents can identify both drug associates, and friends of the user who likely have helpful

12   information about the user, his location, and his activities.

13          50.     Photographs on a cellular telephone are evidence because they help identify

14   the user, either through his or her own picture, or through pictures of friends, family, and

15   associates that can identify the user.  Pictures also identify associates likely to be

16   members of the drug trafficking organization.  Also, digital photos often have embedded

17   "geocode" or GPS information embedded in them.  Geocode information is typically the

18   longitude and latitude where the photo was taken.  Showing where the photo was taken

19   can have evidentiary value.  This location information is helpful because, for example, it

20   can show where coconspirators meet, where they travel, and where assets might be

21   located.

22          51.     Stored address records are important evidence because they show the user's

23   close associates and family members, and they contain names and nicknames connected

24   to phone numbers that can be used to identify suspects.

25                          **TECHNICAL TERMS**

26          52.     Based on my training and experience, I use the following technical terms to

27   convey the following meanings:

28

AFFIDAVIT OF SA SPENCER – 13
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          a.      Wireless telephone:  A wireless telephone (or mobile telephone, or

2    cellular telephone) is a handheld wireless device used for voice and data communication

3    through radio signals.  These telephones send signals through networks of

4    transmitter/receivers, enabling communication with other wireless telephones or

5    traditional "land line" telephones.  A wireless telephone usually contains a "call log,"

6    which records the telephone number, date, and time of calls made to and from the phone.

7    In addition to enabling voice communications, wireless telephones offer a broad range of

8    capabilities.  These capabilities include: storing names and phone numbers in electronic

9    "address books;" sending, receiving, and storing text messages and e-mail; taking,

10   sending, receiving, and storing still photographs and moving video; storing and playing

11   back audio files; storing dates, appointments, and other information on personal

12   calendars; and accessing and downloading information from the Internet.  Wireless

13   telephones may also include global positioning system ("GPS") technology for

14   determining the location of the device.

15         b.      Digital camera:  A digital camera is a camera that records pictures as

16   digital picture files, rather than by using photographic film.  Digital cameras use a variety

17   of fixed and removable storage media to store their recorded images.  Images can usually

18   be retrieved by connecting the camera to a computer or by connecting the removable

19   storage medium to a separate reader.  Removable storage media include various types of

20   flash memory cards or miniature hard drives.  Most digital cameras also include a screen

21   for viewing the stored images.  This storage media can contain any digital data, including

22   data unrelated to photographs or videos.

23         c.      Portable media player:  A portable media player (or "MP3 Player" or

24   iPod) is a handheld digital storage device designed primarily to store and play audio,

25   video, or photographic files.  However, a portable media player can also store other

26   digital data.  Some portable media players can use removable storage media.  Removable

27   storage media include various types of flash memory cards or miniature hard drives.  This

28   removable storage media can also store any digital data.  Depending on the model, a

AFFIDAVIT OF SA SPENCER – 14
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  portable media player may have the ability to store very large amounts of electronic data
2  and may offer additional features such as a calendar, contact list, clock, or games.

3        d.      GPS: A GPS navigation device uses the Global Positioning System
4  to display its current location.  It often contains records of the locations where it has been.
5  Some GPS navigation devices can give a user driving or walking directions to another
6  location.  These devices can contain records of the addresses or locations involved in
7  such navigation.  The Global Positioning System (generally abbreviated "GPS") consists
8  of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely
9  accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation
10 of the current time, combined with a special sequence of numbers.  These signals are sent
11 by radio, using specifications that are publicly available.  A GPS antenna on Earth can
12 receive those signals.  When a GPS antenna receives signals from at least four satellites, a
13 computer connected to that antenna can mathematically calculate the antenna's latitude,
14 longitude, and sometimes altitude with a high level of precision.

15       e.      Internet: The Internet is a global network of computers and other
16 electronic devices that communicate with each other.  Due to the structure of the Internet,
17 connections between devices on the Internet often cross state and international borders,
18 even when the devices communicating with each other are in the same state.

19       53.    Based on my training, experience, and research and from consulting the
20 manufacturers' advertisements and product technical specifications available online, I
21 know that **SUBJECT PHONES**, seized on May 8, 2018, from JOSUE BARBA-
22 ARRIAGA, GERERDO SALCEDO-ALCANTAR, and GABRIEL SAUCEDO-
23 ALCAUTER, have the capability that allow them to serve as a wireless telephone, digital
24 camera, portable media player, and/or GPS navigation device.  In my training and
25 experience, examining data stored on devices such as **SUBJECT PHONES** can uncover,
26 among other things, evidence that reveals or suggests who possessed or used the device.
27 //
28 //

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

54.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

55.   *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

AFFIDAVIT OF SA SPENCER – 16
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         e.     Further, in finding evidence of how a device was used, the purpose

2 of its use, who used it, and when, sometimes it is necessary to establish that a particular

3 thing is not present on a storage medium.

4         f.     I know that when an individual uses an electronic device in relation

5 to a drug trafficking crime, the individual's electronic device will generally serve both as

6 an instrumentality for committing the crime, and also as a storage medium for evidence

7 of the crime. The electronic device is an instrumentality of the crime because it is used as

8 a means of committing the criminal offense. The electronic device is also likely to be a

9 storage medium for evidence of crime. From my training and experience, I believe that

10 an electronic device used to commit a crime of this type may contain: data that is

11 evidence of how the electronic device was used; data that was sent or received; and other

12 records that indicate the nature of the offense.

13      56.    *Nature of examination.* Based on the foregoing, and consistent with Rule

14 41(e)(2)(B), the warrants I am applying for would permit the examination of SUBJECT

15 PHONES consistent with the warrant. The examination may require authorities to

16 employ techniques, including but not limited to computer-assisted scans of the entire

17 medium, that might expose many parts of the device to human inspection in order to

18 determine whether it is evidence described by the warrant.

19      57.    *Manner of execution.* Because this warrant seeks only permission to

20 examine devices already in law enforcement's possession, the execution of this warrant

21 does not involve the physical intrusion onto a premises. Consequently, I submit there is

22 reasonable cause for the Court to authorize execution of the warrant at any time in the

23 day or night.

24 **CONCLUSION**

25      58.    Based upon the evidence gathered in this investigation and set out above,

26 including but not limited to my review of data and records, information received from

27 other federal agents, and my training and experience, there is probable cause to believe

28 that evidence, fruits and/or instrumentalities of the crime of Title 21, United States Code,

AFFIDAVIT OF SA SPENCER – 17
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Sections 841(a)(1) (distribution and possession with intent to distribute a controlled

2   substance) and 846 (conspiracy to distribute a controlled substance), as described in

3   Attachment B to this affidavit incorporated herein by reference, will be located during the

4   search of **SUBJECT PHONES** further described in Attachments A1-A6 to this affidavit,

5   incorporated herein by reference.

6

7

8   TAMMY L. SPENCER

    Special Agent, HSI

9

10      SUBSCRIBED AND SWORN to before me this 8th day of June, 2018.

11

12

13

14   PAULA L. MCCANDLIS

     United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SA SPENCER – 18
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

## **ATTACHMENT A1**
### Item to be Searched

3

4

    A blue Kyocera touch-screen cellular phone, Model C6743, HEX number 990-006-107-357-52, seized from a Nissan Versa driven by JOSUE BARBA-ARRIAGA (hereinafter "**SUBJECT PHONE #1**") at the time of his arrest on May 8, 2018; currently in the custody of Homeland Security Investigations at 1000 Second Avenue, Seattle, Washington.

5

6

7

8

    This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A1 – 1
USAO #2018R00653

1

2

**ATTACHMENT A2**
**Item to be Searched**

3    A black LG flip phone, Model LG-B470, Serial Number 709VTYK362282,

4   seized from a Nissan Versa driven by JOSUE BARBA-ARRIAGA (hereinafter

5   "**SUBJECT PHONE #2**") at the time of his arrest on May 8, 2018; currently in the

6   custody of Homeland Security Investigations at 1000 Second Avenue, Seattle,

7   Washington.

8    This warrant authorizes the forensic examination of the device for the purpose of

9   identifying the electronically stored information described in Attachment B.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A2 – 1
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A3
### Item to be Searched

A black ZTE touch-screen cellular phone, Model N9136, Serial Number 325776802F15, seized from a Nissan Versa driven by JOSUE BARBA-ARRIAGA (hereinafter "**SUBJECT PHONE #3**") at the time of his arrest on May 8, 2018; currently in the custody of Homeland Security Investigations at 1000 Second Avenue, Seattle, Washington.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT A3 – 1
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A4
### Item to be Searched

A black LG touch-screen cellular phone with a blue case, Model LGMP260, Serial Number 703CYWC093065, seized from the person of GERERDO SALCEDO-ALCANTAR (hereinafter "**SUBJECT PHONE #4**") at the time of his arrest on May 8, 2018; currently in the custody of Homeland Security Investigations at 1000 Second Avenue, Seattle, Washington.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT A4 – 1
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A5
### Item to be Searched

A gold iPhone touch-screen cellular phone, Model A1660, FCC ID BCG-E3085A IC: 579C-E3085A, seized from a Chevrolet Tahoe driven by GABRIEL SAUCEDO-ALCAUTER (hereinafter "**SUBJECT PHONE #5**"), at the time of his arrest on May 8, 2018; currently in the custody of Homeland Security Investigations at 1000 Second Avenue, Seattle, Washington.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT A5 – 1
USAO #2018R00653

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A6
### Item to be Searched

A Verizon ZTE silver and black flip phone, Model Z233V, Serial Number 32F476342FEB, seized from a Chevrolet Tahoe driven by GABRIEL SAUCEDO-ALCAUTER (hereinafter "**SUBJECT PHONE #6**"), at the time of his arrest on May 8, 2018; currently in the custody of Homeland Security Investigations at 1000 Second Avenue, Seattle, Washington.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT A6 – 1
USAO #2018R00653

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**
**Items to be Seized**

This warrant authorizes the government to search for and seize the following items from the SUBJECT PHONE(S) which constitute evidence, instrumentalities, or fruits of violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substance) and 846 (conspiracy to distribute a controlled substance):

a.      Assigned telephone numbers and identifying serial numbers (e.g., ESN, MIN, IMSI, IMEI);

b.      Stored lists of received, sent, or missed calls and/or text messages;

c.      Stored contact information;

d.      Stored photographs and videos of narcotics; stored photographs and videos which relate to customers and their identifying information; stored photographs and videos which relate to the sources, amounts, types, payments for, and prices of drugs trafficked; stored photographs or videos that show the user of the phone and/or suspected co-conspirators; and any embedded GPS data associated with the above photographs or videos; and

e.      Stored text messages including Apple iMessages, Blackberry Messenger messages or other similar messaging services where the data is stored on the telephone which relate to narcotics, customers, sources, amounts, types, payments for, and prices of drugs trafficked; and

f.      Evidence of user attribution showing who used or owned the SUBJECT PHONE(S) at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970